IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

U.S. District Court
Wisconsin Eastern

JUL 08 2026

FILED
Clerk of Court

**26 -C- 1 1 9 5**

Case No.: _____

(JURY TRIAL DEMANDED)

---

U'si Ch-ab, (f/k/a Alan N. Carroll Jr.),

Plaintiff, pro se, appearing in his proper status as an Indigenous Aborigine American and asserting his juridical personality Pursuant to Article IX of the American Declaration on the Rights of Indigenous Peoples,

v.

THE UNITED STATES OF AMERICA, and

RODGER STOKELY, in his individual capacity,

Defendants.

---

(JURY TRIAL DEMANDED)

**COMPLAINT THROUGH THE FEDERAL TORT CLAIMS ACT AND *BIVENS v. SIX UNKNOWN NAMED AGENTS***

---

## I. INTRODUCTION

1. This is a civil action for money damages, declaratory relief, and injunctive relief against the United States of America for negligence through the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 – 2680, and against Transportation Security Administration (TSA) Manager Rodger Stokely for violations of Plaintiff's

Page 1 of 26

Constitutional rights through the Fourth and Fourteenth Amendments to the United States Constitution.

2. On June 27th, 2024, TSA Manager Rodger Stokely, acting under color of federal law, unlawfully prevented U'si Ch-ab, a Firekeeper Chief for the Iroquois Confederacy of Aborigine American People (I.C.A.A.P.), from boarding a flight at the Milwaukee Mitchell International Airport. When Plaintiff presented his lawful, notarized, and pre-verified Indigenous Aborigine American self-identification card (See Exhibit I:1) and dossier (Exhibit I:2; All Exhibits, A – V, are attached hereto), a TSA officer refused it, stating that the I.C.A.A.P. did not appear on the TSA's list of federally recognized tribes. Defendant Stokely, as supervising manager, ratified this refusal and failed to implement the mandatory alternative identity verification procedures required by TSA policy (Exhibit G). This failure constituted a breach of a mandatory, ministerial duty through federal regulations, giving rise to an FTCA negligence claim against the United States. It also constituted a deprivation of Plaintiff's right to equal treatment and his right to travel, giving rise to Constitutional tort claims against Defendant Stokely through *Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)*.

3. Plaintiff seeks compensatory damages for severe emotional distress, declaratory relief stating that the Defendant's actions were unlawful, and injunctive relief compelling the TSA to recognize lawful, notarized Indigenous Aborigine American self-identification documents consistent with the United States' fiduciary obligations through, but not limited to, the Northwest Ordinance of 1787 (Section 14., Article 3. (Exhibit E)), the government-to-government relationship affirmed in H. Con. Res. 331 (See Exhibit I:2 @ pages 4 –

5), and the American Declaration on the Rights of Indigenous Peoples or Exhibit O (A.D.R.I.P.).

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the FTCA claim against the United States pursuant to 28 U.S.C. § 1346(b). Plaintiff has exhausted all administrative remedies as required by 28 U.S.C. § 2675. Plaintiff filed an initial administrative claim with the TSA which was denied on September 18th, 2025 on the basis that claims arising from alleged violations of the Constitution and Federal laws are not cognizable under the FTCA (See Exhibit R). Thereafter, Plaintiff filed an Amended SF-95 (Exhibit S:3), a written Request for Reconsideration (Exhibit S:5), and an Amended Supplemental Document in support thereof (Exhibit S:4), curing procedural deficiencies by clarifying the negligence basis of the claim under the FTCA while preserving Constitutional claims through this independent *Bivens* action. Plaintiff also filed a Notice of Intent to Sue on February 25th, 2026 (Exhibit T). When the TSA failed to respond to the Amended Claim within six months, the claim was deemed denied on March 29th, 2026 pursuant to 28 U.S.C. § 2675(a). This action is filed within six months of the date of deemed denial.

5. Curing Procedural Deficiencies: Plaintiff's initial administrative claim (SF-95) demanded $5,000 in damages (See Exhibits S:1 and S:2). The TSA denied this claim on September 18th, 2025 (Exhibit R), characterizing it as arising solely from Constitutional violations and therefore not cognizable under FTCA. Recognizing that the denial was based on procedural deficiencies — specifically, inadequate specification of the sum certain and ambiguous framing of the legal theory — Plaintiff timely filed an Amended Claim and Request for

Case 2:26-cv-01195-JPS    Filed 07/08/26    Page 3 of 26    Document 1

Reconsideration on September 29th, 2025, within the 6-month period prescribed by 28 U.S.C. § 2401(b) and specifically authorized by 28 C.F.R. § 14.9(b). The Amended Claim (Exhibit S:3): (1) clarified the $75,000 sum certain in accordance with 28 U.S.C. § 2675(b); (2) explicitly grounded the claim in negligence rather than Constitutional violations; and (3) cured any technical defects in the original filing. The Request for Reconsideration (Exhibit S:5) and Amended Supplemental Document (Exhibit S:4) accompanied the Amended Claim. Pursuant to 28 C.F.R. § 14.9(b), the filing of this request for reconsideration reset the administrative exhaustion clock, and the TSA's failure to respond substantively within 6 months constitutes a deemed denial pursuant to 28 U.S.C. § 2675(a), establishing that Plaintiff has exhausted administrative remedies while demonstrating good faith compliance with FTCA procedural requirements.

6. This Court has subject-matter jurisdiction over the Constitutional claims against Defendant Stokely pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

7. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district, specifically at Milwaukee Mitchell International Airport.

### III. PARTIES

8. Plaintiff U'si Ch-ab is a Fire-keeper Chief for the I.C.A.A.P., a separate and distinct Confederacy of Aborigine American Nations with a government-to-government relationship with the United States. He is a member of the Onkwehonwe Mohawks through bloodline and birthright and has formally renounced allegiance to the United States of America and affirmed allegiance to the I.C.A.A.P.

pursuant to his Oath and Affirmation dated October 16th, 2020, Gregorian Calendar Year (See Exhibit C). He appears before this Court pro se pursuant to 28 U.S.C. § 1654, maintaining his juridical personality and right to self-representation through Article IX of the A.D.R.I.P. (See Exhibit O). He is a sui juris individual currently present in the Northwest Territory of North America, Mescousing (Wisconsin), and an 'Indians not taxed' within the meaning of Article I, Section 2, Clause 3 of the U.S. Constitution (Exhibit B) and Section 2 of the Fourteenth Amendment (Exhibit D).

9. Defendant THE UNITED STATES OF AMERICA is sued pursuant to the Federal Tort Claims Act (FTCA), which waives sovereign immunity for certain torts committed by federal employees acting within the scope of their employment.

10. Defendant Rodger Stokely is a manager for the Transportation Security Administration (TSA), an agency within the U.S. Department of Homeland Security. At all times relevant to this complaint, Defendant Stokely was acting under color of federal law and within the scope of his employment. He is sued in his individual capacity for Constitutional violations[1].

---

1. While Supervisor Nicholas was identified in the administrative claim as contributing to the negligent conduct through his failure to investigate and remedy Stokely's actions, Plaintiff is pursuing the Constitutional claims against Defendant Stokely as the individual who directly effected the seizure and discrimination. Supervisor Nicholas's conduct is subsumed under the FTCA claim against the United States, which is

Case 2:26-cv-01195-JPS    Filed 07/08/26    Page 5 of 26    Document 1

vicariously liable for the negligence of both employees acting within the scope of their employment.

## IV. LIMITED APPEARANCE AND RESERVATION OF RIGHTS

11. Plaintiff appears before this Court specially and for the limited purpose of obtaining redress for the TSA's tortious conduct and Constitutional violations through the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., and *Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)*. This appearance is made pursuant to 28 U.S.C. § 1654 and is expressly limited to the procedural mechanisms necessary to secure review of Defendants' unlawful conduct.

12. Notwithstanding this invocation of federal procedural remedies:

- Plaintiff does not consider himself a "State resident or citizen of the United States" within the meaning of the Fourteenth Amendment, but rather an "Indians not taxed" through, but not limited to, Exhibits B & D;

- Plaintiff does not and will never submit to the municipal jurisdiction of the State of Wisconsin or United States as a fully subject "citizen," but maintains his separate and distinct juridical personality as an Indigenous Aborigine American under the Great Law of Peace and the laws within the I.C.A.A.P.;

- Plaintiff invokes these federal statutes and procedures for the limited purpose only of securing redress for the specific injuries caused by Defendant Stokely's negligence and Constitutional violations on June 27th, 2024, Gregorian Calendar Year;

- Plaintiff fully maintains his political exclusion status, Indigenous American identity, and government-to-government relationship with Congress or the United States recognized in, but not limited to, Exhibits B, C, D, E, I, M, N, and O.

13. For this limited purpose, Plaintiff invokes and adopts the following federal provisions without waiving any Constitutional or jurisdictional defenses:

   - 5 U.S.C. § 3331 — Oath of Office requirements for federal officers
   - FRCP 4 — Summons
   - 28 U.S.C. § 1346 — Federal Tort Claims Act jurisdiction
   - 28 U.S.C. § 1651 — Writs
   - 28 U.S.C. § 1654 — Right to proceed pro se
   - 28 U.S.C. § 1914 — District court; filing and miscellaneous fees; rules of court
   - 28 U.S.C. § 1920 — Taxation of costs
   - 28 U.S.C. § 2401 — Time for commencing action against United States
   - 28 U.S. Code § 2412 — Costs and fees
   - 28 U.S. Code § 2241 — Power to grant writ
   - 28 U.S.C. § 2671 et seq. — FTCA procedural provisions
   - 28 U.S.C. § 2675 — Disposition by federal agency as prerequisite; evidence
   - 28 C.F.R. § 14.9 — Final denial of claim
   - 49 C.F.R. § 1540.107 — TSA identification procedures (challenged herein)

Case 2:26-cv-01195-JPS    Filed 07/08/26    Page 7 of 26    Document 1

14. This limited invocation does not constitute:

- A waiver of Plaintiff's exclusion status through Exhibits B and D;
- An acceptance of United States citizenship or subjection to general federal municipal jurisdiction;
- A submission to federal taxation or any other regulatory authority beyond the specific claims asserted herein; or
- A waiver of any rights, liberties, or fundamental freedoms through, but not limited to, Exhibits E and O, the laws within the I.C.A.A.P. or the Great Law of Peace.

15. Plaintiff expressly reserves the following rights and defenses without limitation:

1. Constitutional Defenses: All protections through Exhibits B, D, E, I:2 @ pages 4 – 5;

2. Jurisdictional Defenses: The right to contest lack of personal jurisdiction to the extent Defendants presume Plaintiff is a "U.S. citizen" subject to general federal authority, when Plaintiff maintains his distinct Indigenous juridical personality and "Indians not taxed" status; and the right to contest any attempt to apply federal municipal law beyond the specific FTCA and *Bivens* claims for redress of the June 27th, 2024 injuries;

3. Burden of Proof: The right to demand that Defendants bear the burden of proving:
   - That 'Indians not taxed' is not a valid Constitutional exclusion status;

- That the TSA's 'federally recognized tribes' list may Constitutionally exclude 'Indians not taxed' who are members of a separate and distinct Indigenous Aborigine American Nations within the I.C.A.A.P., with a government-to-government relationship with Congress;

- That Defendant Stokely had authority to refuse alternative verification mandated by TSA policy (Exhibit G) and 49 C.F.R. § 1540.107(c); and

- That the fiduciary duty of the "utmost good faith" through the Northwest Ordinance of 1787, Section 14., Article 3. (Exhibit E) does not apply to federal TSA agents;

4. Separate Juridical Personality: The right to maintain Plaintiff's and his People's unique and distinct identity, culture, heritage, and political status as Indigenous Aborigine Americans under the Great Law of Peace and the laws within the I.C.A.A.P., expressing ourselves on a government-to-government basis pursuant to Exhibits A – E, I:1-2, and M – O.

16. This limited appearance expressly excludes any waiver of: (a) the defense that any assertion of general federal authority over Plaintiff as a "U.S. citizen" is void as applied to 'Indians not taxed'; (b) the right to seek appropriate writs, including collateral relief, pursuant to the All Writs Act, 28 U.S.C. § 1651, and the right to federal habeas corpus through 28 U.S.C. § 2241(c)(3) if detained in violation of the Constitution, laws, or treaties of the United States.; (c) any

Case 2:26-cv-01195-JPS    Filed 07/08/26    Page 9 of 26    Document 1

Indigenous rights through, but not limited to, Exhibits O, P or the Universal Declaration of Human Rights, and United Nations Declaration on the Rights of Indigenous Peoples (Reserved for future proceedingsexhibit); or (d) Plaintiff's Oath and Affirmation to the I.C.A.A.P. (Exhibit C).

17. Reservation of Right to Standby Counsel: Plaintiff reserves the right to request standby counsel or associate counsel for the limited purpose of trial proceedings, while maintaining his juridical personality and pro se status pursuant to Article IX within Exhibit O and 28 U.S.C. § 1654. This reservation does not constitute a waiver of Plaintiff's right to self-representation, nor does it alter Plaintiff's status as a sui juris individual appearing in his proper status as an Indigenous Aborigine American. Any standby counsel would serve in an advisory capacity at trial only and would not supplant Plaintiff's pro se appearance or his authority to conduct the litigation. This reservation ensures that Plaintiff may avail himself of professional legal assistance for complex evidentiary or procedural matters at trial without compromising his juridical personality or his government-to-government relationship with this Court.

V. STATEMENT OF FACTS

18. In preparation for air travel, Plaintiff contacted the TSA Contact Center via email between May 26th – 27th, 2024, to verify the acceptability of his lawful, notarized Indigenous Aborigine American self-identification card and dossier, which includes his photograph and other identifying information (See Exhibit J:1).

19. The email further stated that "[i]f we are able to confirm your identity, you will be cleared to enter the screening checkpoint" (Exhibit J:2), thereby informing Plaintiff that his identification could

be subjected to the alternative verification process rather than per se rejected.

20. On June 27th, 2024, Plaintiff, accompanied by his mother and son, arrived at the Milwaukee Mitchell International Airport for a scheduled Southwest Airlines flight (See Exhibit U or Boarding Pass tickets and the Southwest Reservation Detail list).

21. At the TSA security checkpoint at Gate C25, Plaintiff presented Exhibit I:1-2.

22. The TSA officer examined Id. and refused it, stating that the I.C.A.A.P. did not appear on the TSA's list of federally recognized tribes.

23. The officer's refusal was based on a TSA policy that maintains a list limited to federally recognized tribes, which excludes Indigenous Aborigine American nations within the I.C.A.A.P. that are not federally recognized but are nevertheless 'Indians not taxed' within Exhibits B and D. This list-based exclusion operates to discriminate against members of non-federally-recognized Indigenous American nations.

24. Plaintiff requested to speak with a manager. Defendant Rodger Stokely arrived and was informed of the situation.

25. Despite TSA policy requiring that travelers without acceptable identification be allowed to complete an alternative identity verification process — which includes collecting the traveler's name and current address to confirm identity — Defendant Stokely failed to initiate this mandatory procedure. Instead, Defendant Stokely ratified the initial officer's refusal and denied Plaintiff passage

without offering the alternative verification required by TSA's own guidelines (Also See Exhibit K or Witness Statements).

26. Defendant Stokely cited no legitimate security threat, did not identify any prohibited items, and did not claim Plaintiff was on any watch list. The sole basis for the refusal was that the I.C.A.A.P. was not included on the TSA's federally-recognized-tribes list, and Defendant Stokely's failure to implement the mandatory alternative verification process within Exhibit G.

27. Defendants' conduct demonstrates the egregious and intentional nature of the discrimination, constituting conduct that would violate 18 U.S.C. § 242 if prosecuted criminally. Plaintiff's claims for relief are brought pursuant *to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)*, for Constitutional violations and the Federal Tort Claims Act for negligence.

28. As a direct result of Defendant Stokely's refusal, Plaintiff was unlawfully prevented from passing through the security checkpoint and was denied his right to travel by air. This public denial caused Plaintiff significant humiliation, emotional distress, and loss of his right to travel by air.

## VI. LAWFUL FOUNDATION — INDIGENOUS ABORIGINE AMERICAN STATUS AND FEDERAL FIDUCIARY DUTY

29. The United States government, and by extension its federal officers, owe a duty of the "utmost good faith" toward Indigenous Aborigine Americans, including the Plaintiff. This duty is established by the foundational acts of Congress and is the Supreme Law of the Land.

30. The Northwest Ordinance of 1787 or Exhibit E is a binding compact between the original states and the peoples of the territory, established within Section 14, Article 3:

> "It is hereby ordained and declared by the authority aforesaid, that the following articles shall be considered as articles of compact between the original States and the people and States in the said territory and forever remain unalterable, unless by common consent, to wit:

> The utmost good faith shall always be observed towards the Indians; their lands and property shall never be taken from them without their consent; and, in their property, rights, and liberty, they shall never be invaded or disturbed..." Federal courts have held this provision to be binding federal statutory law applicable to individual Indians, not merely federally recognized tribes. See *Swimming Turtle v. Board of County Commissioners, 441 F. Supp. 368, 374 (N.D. Ind. 1975)* (holding that the Northwest Ordinance is 'part of the federal statutory law' and that 'the immunity conferred by Exhibit E is not limited to Indian Tribes but may, in appropriate cases, apply to individual Indians as well'); Also see H. Con. Res. 331 within Exhibit I:2 (acknowledging the government-to-government relationship between the I.C.A.A.P.).

31. Through the Supremacy Clause (Article VI) of the U.S. Constitution, this compact, along with treaties, constitutes the Supreme Law of the Land," binding on all federal officers.

32. All federal officers, including Defendant Stokely, are bound by their Oath of Office under 5 U.S.C. § 3331 or Exhibit F to 'support and defend the Constitution of the United States'. This oath imposes a mandatory duty to uphold Constitutional rights, including the right to equal protection and to be free from unreasonable seizures. Defendants' failure to honor this oath — by refusing to accept Exhibit I:1-2 and subjecting him to discriminatory treatment — constitutes a breach of their ministerial duties.

33. Plaintiff has formally renounced all allegiance and fidelity to the United States of America and affirmed allegiance to the I.C.A.A.P. pursuant, but not limited to, Exhibits B, C, and D establishing his status as an 'Indians not taxed' — a member of a separate and distinct community of Aborigine Americans with a government-to-government relationship with Congress, and not subject to the municipal jurisdiction of the United States. This affirmation mirrors the oath required of federal officers under 5 U.S.C. § 3331 (Exhibit F), demonstrating that Plaintiff maintains a unique exclusion status, not a subordinate status.

34. The United States Supreme Court has recently acknowledged that the Constitution and federal apportionment statutes "explicitly excludes only one category of [People] from the apportionment, 'Indians not taxed,'" confirming that this exclusion status constitutes a separate and distinct political classification recognized by federal law, See *Trump v. New York, 592 U.S. ___ (2020) @ page 11 (Breyer, J., dissenting)*. This exclusion demonstrates that "Indians not taxed" are not part of the U.S. population for purposes of representation and taxation, but are rather recognized a separate and distinct political

Case 2:26-cv-01195-JPS     Filed 07/08/26     Page 14 of 26     Document 1

communities with a government-to-government relationship with the United States.

35. The Constitutional phrase "Indians not taxed" was intended by the framers of the Fourteenth Amendment to denote a separate and distinct political status, not a racial classification. This legislative intent is confirmed by historical records, including the *Congressional Globe, 39th Cong., 1st Sess. 572 (Feb. 1, 1866)* (See Exhibit M) and *Senate Report No. 268, 41st Cong., 3d Sess. 14 (1870)* (See Exhibit N). This establishes that classifications based on this status are political classifications subject to the highest level of judicial scrutiny.

36. The TSA's policy of maintaining a list of 'federally recognized tribes' for identification purposes, to the exclusion of Indigenous American nations that are 'Indians not taxed' but not federally recognized, constitutes discrimination based on political status, not race. Through *Morton v. Mancari, 417 U.S. 535 (1974)*, classifications based on membership in Indigenous communities are political classifications. While *Mancari* upheld an employment preference under rational basis review, this case differs because the TSA's exclusion operates to deny the fundamental right to travel, which the Supreme Court has held is 'part of the "liberty" of which a citizen cannot be deprived without due process of law', *Kent v. Dulles, 357 U.S. 116, 125 (1958)*; also see *Thompson v. Smith, 154 S.E. 579, 582 (Va. 1930)* (right to travel by automobile is 'not a mere privilege which a city may prohibit or permit at will, but a common right'); *Chicago Motor Coach Co. v. Chicago, 169 N.E. 22, 25 (Ill. 1929)* ('even the legislature has no power to deny to a citizen the right to travel upon the highway'). When combined with the historically unique Constitutional status of 'Indians not taxed' — who are explicitly excluded from the U.S.

population for representation and tax purposes (*Trump v. New York, 592 U.S. ___ (2020) (Breyer, J., dissenting)*), and who constitutes a suspect class entitled to strict scrutiny (*Elk v. Wilkins, 112 U.S. 94 (1884)*) — the TSA's exclusion fails Constitutional muster. Unlike the employment preference in *Mancari*, which furthered Indian self-government, the TSA's exclusion frustrates the government-to-government relationship within <u>Exhibit I:2 @ pages 4 – 5</u>, Exhibit E's mandate of the 'utmost good faith', and the fundamental right to interstate travel.

## VIII. COUNT I: NEGLIGENCE UNDER THE FEDERAL TORT CLAIMS ACT

(Against Defendant The United States of America)

37. Plaintiff re-alleges and includes by reference the preceding paragraphs.

38. The United States, through its employees at the TSA, including Defendant Stokely, owed Plaintiff a duty of care to conduct security screenings in a non-negligent manner and in accordance with the Constitution, federal law, and established TSA procedures within Exhibit G.

39. This duty included the non-discretionary, ministerial requirement to accept lawful identification documents, which exists at three hierarchical levels, but not limited to:

    a. Constitutional Level: Through the Supremacy Clause (Article VI) and Exhibit E constitutes "the Supreme Law of the Land," binding on all federal officers. This compact mandates that "the utmost good faith" towards Indigenous Americans and commands that they "shall never be invaded or disturbed" in their rights and liberty. Exhibit B's explicit

Page 16 of 26

exclusion of "Indians not taxed" recognizes a distinct political status requiring federal officers to afford special protections, not exclusions.

b. Statutory Level: Pursuant to 49 C.F.R. § 1540.107(c), an individual may not enter a sterile area if the individual does not present a verifying identity document "unless otherwise authorized by TSA on a case-by-case basis." The TSA Contact Center's written response informing Plaintiff that there is "no standard list" of acceptable secondary ID's and instructing him to "bring what you have available" within Exhibit J:2 established that alternative verification procedures were available for his Indigenous Aborigine American self-identification. Defendant Stokely's failure to implement these alternative verification procedures — despite the Contact Center's guidance that such procedures existed — constituted a ministerial breach of the statutory duty to provide case-by-case authorization when verifying identity documents. This statutory duty incorporates the Constitutional mandate of the "utmost good faith" and may not be applied in a manner that discriminates against a Constitutionally protected Indigenous American status.

c. Policy Level: TSA's published policy (Exhibit G) establishes mandatory, non-discretionary procedures for alternative identity verification when travelers present non-standard identification. The policy explicitly states that travelers without acceptable ID "may still be allowed to fly" after completing an identity verification process, and that "if your identity is confirmed, you will be allowed to enter the

screening checkpoint." This policy-level duty implements both the statutory requirement and the Constitutional mandate.

Defendant Stokely breached this ministerial duty at all three levels — Constitutional, statutory, and policy — by refusing to honor the TSA Contact Center's case-by-case authorization and failing to implement the mandatory alternative verification procedures.

40. Defendant Stokely's specific breaches included:
    a. Refusing to accept Exhibit I:1-2 without any legitimate security justifications;

    b. Failing to follow mandatory, ministerial TSA procedures for alternative identity verification within Exhibit G; and

    c. Acting in bad faith by discriminating against Plaintiff based solely on his Indigenous Aborigine American identity and status, in direct violation of the government's fiduciary obligations.

41. These breaches do not fall under the discretionary function exception of the FTCA (28 U.S.C. § 2680(a)) because it involved the failure to adhere to mandatory, specific directives in federal regulations and Constitutional law. Where a federal statute, regulation, or policy specifically prescribes a course of action, an employee's failure to follow it is a ministerial breach, not a discretionary act, See *United States v. Gaubert, 499 U.S. 315, 322-23 (1991); Berkovitz v. United States, 486 U.S. 531, 536 (1988); Calderon v. United States, 123 F.3d 947 (7th Cir. 1997).* This case is distinguishable from cases applying the discretionary function exception because Stokely was not making

a policy judgment about security threats or resource allocation; he was simply failing to implement the mandatory, non-discretionary alternative verification procedure specifically prescribed by TSA policy (Exhibit G) and federal regulation (49 C.F.R. § 1540.107(c)). The three-level hierarchy of duties set forth in Paragraph 38 — Constitutional (Exhibits B, E, and the Supremacy Clause), statutory (49 C.F.R. § 1540.107(c)), and policy (Exhibit G) — specifically prescribes the course of action Stokely was required to follow, leaving no room for discretion.

42. As a direct and proximate result of the negligence of the United States' employee, Plaintiff suffered severe emotional distress, humiliation, and anxiety, for which he seeks $75,000.00 in damages.

## XI. COUNT II: VIOLATION OF THE FOURTH AMENDMENT — UNREASONABLE SEIZURE
(Bivens Claim Against Defendant Rodger Stokely)

43. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

44. Although the Fourth Amendment to the U.S. Constitution does not speak to "Indians Not Taxed" directly, in this case it does apply and protects Plaintiff from unreasonable seizures, including seizures consisting of the restraint of liberty and prevention of movement by government officials acting under color of law.

45. Defendant Stokely, acting under color of federal law, seized Plaintiff when he detained him at the security checkpoint by preventing him from proceeding to his flight and restraining his freedom of movement and right to travel. Through Exhibit L:2 or Black's Law Dictionary (4th Ed.), "to detain" means "to delay, to hinder, to restrain from proceeding" — precisely the injury Plaintiff suffered.

46. This seizure was unreasonable because:

a. It was executed without a warrant, probable cause, reasonable suspicion, or any other legitimate security justification. Defendant Stokely cited no security threat, identified no prohibited items, and did not claim Plaintiff was on any watch list.

b. It violated the fiduciary duty of the "utmost good faith" mandated by Exhibit E which commands that Indigenous Aborigine Americans "shall never be invaded or disturbed" in their "property, rights, and liberty." Through the Supremacy Clause (Article VI), this compact is "the Supreme Law of the Land," binding on all federal officers including Defendant Stokely. This Constitutional-level duty informed and elevated the statutory and policy duties described in Count I, Paragraph 38.

c. It was based solely on Plaintiff's status as an 'Indians not taxed' — a classification separate and distinct from both U.S. citizens and "domestic dependent [Native-American] nations" (See first definition of "Indian Tribes" and "Indians" within Exhibit L:1 or John Bouvier's Constitutional Law Dictionary (1856 Ed.). This status creates three binding legal effects:

(1) Through *Morton v. Mancari, 417 U.S. 535 (1974)*, tribal membership classifications are political, not racial, and trigger strict scrutiny when denying fundamental rights;

(2) Unlike *Worcester v. Georgia, 6 Pet. 515 (1832)* and *Cherokee Nation v. Georgia, 5 Pet. 1 (1831)*, which addressed "domestic dependent [Native-American] nations" in a ward-

guardian relationship with the United States (See Exhibit N; There's a fundamental distinction between 'Indians Not Taxed' and federally recognized Native-Americans). Plaintiff's membership within the I.C.A.A.P. exists as a separate and distinct political community with whom the United States maintains treaties and a government-to-government relationship (See <u>Exhibit I:2 @ pages 4 – 5</u>), not as dependent wards

(3) The legislative intent, confirmed in Exhibit M — Senator Doolittle's statement that 'Indians not taxed [are] excluded because they [are] not regarded as a portion of the population of the United States', establishes that Plaintiff's membership within the I.C.A.A.P. exists independently of U.S. jurisdiction. Through *Elk v. Wilkins, 112 U.S. 94 (1884)*, members of such separate political communities constitute a suspect class entitled to strict scrutiny.

   d. It frustrated the government-to-government relationship recognized in <u>Id</u>., also Exhibits E and O, which guarantee Indigenous Americans the right to travel and freedom of movement without being "invaded or disturbed" in their liberty.

47. As a direct and proximate result of Defendant Stokely's unconstitutional seizure — preventing Plaintiff from proceeding with his travel and restraining his liberty — Plaintiff suffered a loss of liberty, the denial of his fundamental right to travel, and severe emotional distress.

## X. COUNT III: VIOLATION OF THE FOURTEENTH AMENDMENT — EQUAL PROTECTION GUARANTEE

## (Bivens Claim Against Defendant Rodger Stokely)

48. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

49. The Due Process Clause of the Fifth Amendment incorporates the equal protection guarantees of the Fourteenth Amendment, prohibiting the federal government from engaging in purposeful discrimination.

50. As a member of an Indigenous Aborigine American nation within the I.C.A.A.P., Plaintiff belongs to a class of "Indians not taxed," which is a political classification, not a racial one, explicitly recognized by Exhibits B and D. Through *Morton v. Mancari, 417 U.S. 535 (1974),* classifications based on tribal membership are political classifications. Members of such Indigenous nations constitutes a suspect class for equal protection analysis, See *Elk v. Wilkins, 112 U.S. 94 (1884).* Any differential treatment must be justified by a compelling government interest and narrowly tailored to achieve that interest.

51. The legislative history of the Fourteenth Amendment, confirming the political (not racial) nature of the "Indians not taxed" classification, is documented in Exhibits M and O, which establish that "Indians not taxed" were intended to be treated as members of separate political bodies with a government-to-government relationship with the United States or Congress.

52. Defendant Stokely, acting under color of federal law, intentionally discriminated against Plaintiff by refusing to accept Exhibit I:1-2 and denying him passage based solely on the fact that the I.C.A.A.P. was not included on the TSA's list of federally recognized tribes, as

evidenced by his agreement with the TSA officer that the I.C.A.A.P. "[did] not appear on the list" (See Exhibit A or full Video Recording @ part 1 – 3). By refusing Plaintiff passage without offering the alternative verification procedure mandated by TSA policy within Exhibit G — which is specifically designed for travelers without standard identification to confirm identity and proceed — Defendant Stokely effectively classified Plaintiff as a security threat without any individualized basis. The only basis for this classification was Plaintiff's tribal status, as evidenced by Stokely's statement that the I.C.A.A.P. was not on the federally recognized list. This constitutes purposeful discrimination based on political status.

53. There is no compelling, or even rational, government interest in treating travelers differently based on their Indigenous status, particularly when their self-identification has been pre-verified by the TSA Contact Center within Exhibits J:1-J:2. The TSA has failed to demonstrate that its discrimination against 'Indians not taxed' serves a compelling interest narrowly tailored to achieve that interest, or even that it is rationally related to a legitimate security purpose.

54. Distinction from *Mancari*: This case is readily distinguishable from *Morton v. Mancari*, where the Supreme Court upheld an employment preference for Indians in the Bureau of Indian Affairs under rational basis review because it furthered Indian self-government and was economic / regulatory in nature. Here, the TSA's exclusion operates to deny the fundamental right to travel — a right this Court has held is "part of the 'liberty' of which a citizen cannot be deprived without due process of law," *Kent v. Dulles, 357 U.S. 116, 125 (1958)*. When a political classification targets a suspect class and implicates a fundamental right, strict scrutiny — not rational basis — applies.

Unlike the employment preference in *Mancari*, which promoted tribal self-governance, the TSA's exclusion frustrates the government-to-government relationship recognized in Exhibit I:2 @ pages 4 – 5) and violates Exhibit E's mandate that Aborigine Americans "shall never be invaded or disturbed."

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff U'si Ch-ab respectfully requests that this Court enter judgment in his favor and against Defendants, granting the following relief:

A.  Compensatory Damages against Defendant The United States of America in the amount of $75,000.00 for severe emotional distress, public humiliation, and dignitary harm;

B.  Compensatory and Punitive Damages against Defendant Rodger Stokely in his individual capacity for violations of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments, in an amount to be determined at jury trial;

C.  A Declaratory Judgment that the actions of Defendants violated Plaintiff's rights under the U.S. Constitution and federal law;

D.  Injunctive Relief ordering the TSA to:

i.  Cease its policy and practice of unlawfully rejecting valid, notarized Indigenous Aborigine American identification documents issued by the I.C.A.A.P. and the nations within that Confederacy.

ii. Implement mandatory training for its personnel on the recognition of such documents and the federal government's fiduciary duties toward Indigenous Americans.

iii. Order the TSA to revise its identification policies to include all Indigenous nations, including those that are not federally recognized but are 'Indians not taxed' under the U.S. Constitution, or to provide alternative verification processes that do not discriminate based on tribal recognition status.

E. Reasonable attorney's fees and costs incurred in this action pursuant to 28 U.S.C. § 2412(b) upon Plaintiff becoming the prevailing party; and

F. Any and all other relief that this Court deems just and proper.

G. Reimbursement of filing fees and costs advanced by Plaintiff, including but not limited to the $402 filing fee required through 28 U.S.C. § 1914(a), as part of any judgment entered in favor of Plaintiff pursuant to 28 U.S.C. § 2412(a) and 28 U.S.C. § 1920(1). These costs were advanced solely for the limited purpose of securing redress for the injuries alleged herein and is not a submission to general federal taxation authority.

IN HONOR AND RESPECT,

U'si Ch – ab

f/k/a Alan N. Carroll Jr,

C/O Near 1208A Carr Place

OSHKOSH, WISCONSIN [Northwest Territory of North America]

Zip – Code Exempt D.M.M. 602 1:3 e (2)

Near [54901]

Futuregentleman_2012@hotmail.com

920-385-1521