# A REVISED & COMPLETE LIST OF EXHIBITS WITH CHANGES NOTED

## (For Complaint Through the Federal Tort Claims Act and *Bivens*)

Attached hereto and incorporated by reference are the following Exhibits, also previously presented in the Administrative Claim (SF-95, Amended SF-95, Supplemental Document, and Request for Reconsideration).

**IMPORTANT NOTICE REGARDING EXHIBIT CHANGES**: To maintain consistency with the Administrative Claim, previously filed with the TSA, the following exhibit reassignments have been made from prior drafts:



1. Exhibit C was originally assigned to H. Con. Res. 331; it is now assigned to the Plaintiff's Oath and Affirmation (to align with the original administrative claim documentation).

2. Exhibit I:2 or Plaintiff's Dossier now contains H. Con. Res. 331 (previously Exhibit C), incorporated therein.

3. Exhibit L:1-2 now contains Bouvier's Law Dictionary and Black's Law Dictionary (previously assigned to the original SF-95).

4. Exhibit S:1 – S:4 now contains the Administrative Claims documentation (previously assigned to Exhibit L).

5. Exhibit H (1860 Census) and Exhibit Q (S. Con. Res. 76) are RESERVED for potential future proceedings and are not cited herein.

6. Exhibit O is the American Declaration on the Rights of Indigenous Peoples (A.D.R.I.P.). This document was not previously marked as an exhibit in the Supplemental Document but is properly designated herein as Exhibit O.

7. Exhibit P is now assigned to the Universal Declaration of Human Rights (U.D.H.R.), which was referenced in the Supplemental Document but not previously marked as an exhibit. The statutory reference to 18

U.S.C. § 242 appears only in Paragraph 25 as contextual legal authority and is not attached as an exhibit.

8. Exhibit W is currently UNDEFINED and reserved for future use.

This list is marked and logged accordingly for ease of page referencing and review:

**1.) EXHIBIT A – Video Recording of TSA Incident (June 27th, 2024)**
*(Mentioned in Paragraphs 52)*

**Description**: Audio / video recording of the interaction between Plaintiff and TSA personnel at Milwaukee Mitchell International Airport, Gate C25. This recording captures the end result of Defendant Stokely's agreement with TSA officer's statement that the I.C.A.A.P. "[did] not appear on the list" of federally recognized tribes, confirming the basis for the discriminatory refusal. Also referenced as "full Video Recording @ part 1 – 3" showing the initial officer's refusal and Defendant Stokely's ratification thereof.

**This Critical Point** provides direct evidence of the intentional discrimination and ministerial breach by Defendant Stokely, establishing the factual predicate for the Fourth Amendment seizure and Fourteenth Amendment equal protection claims. This recording is authenticated pursuant to FRE 901(b)(1) (Plaintiff's testimony as witness with knowledge of making the recording and its accuracy) and FRE 901(b)(4) (distinctive characteristics including date / time stamp showing June 27th, 2024, Gate C25 location, and the recognizable voices and appearances of Plaintiff, Defendant Stokely, and TSA personnel). The recording captures the precise moment Defendant Stokely ratified the discriminatory refusal based solely on Plaintiff's tribal status — without offering the alternative verification procedure mandated by TSA policy — demonstrating that the seizure was

Page 2 of 21

unreasonable and motivated by political exclusion status discrimination rather than any individualized security assessment.

**2.) EXHIBIT B – Constitution for the United States, Article I, Section 2, Clause 3, 'Excluding Indians Not Taxed'**
*(Mentioned in Paragraphs 8 and 39a)*

**Description**: The foundational provision establishing the political classification of "Indians not taxed" as distinct from the U.S. population for purposes of representation and taxation. This Constitutional exclusion confirms Plaintiff's status as a member of a separate political community with a government-to-government relationship with Congress, not subject to municipal jurisdiction.

**This Critical Point** establishes Plaintiff's Constitutional exclusion status as a member of a separate political community with a government-to-government relationship with Congress, not subject to municipal jurisdiction, and forms the basis for the fiduciary duty of the "utmost good faith" owed by all federal officers. This Point also establishes lawful authority. The Court may take judicial notice of this provision as a matter of law and public record pursuant to the Court's inherent authority and Federal Rules of Evidence (F.R.E.) 201 (as a fact capable of accurate determination from an indisputable source).

**3.) EXHIBIT C – Oath and Affirmation to the Iroquois Confederacy of Aborigine American People** *(Dated October 16th, 2020)* *(Mentioned in Paragraphs 8, and 16)*

**Description**: Plaintiff's formal renunciation of all allegiance and fidelity to the United States of America and affirmation of allegiance to the I.C.A.A.P. pursuant to his status as a Firekeeper Chief. This

document states: "...absolutely and entirely renounce and abjure all allegiance and fidelity to the United States of America... support and defend the Constitution and Great Law of Peace of the Iroquois Confederacy of Aborigine American People... bear true faith and allegiance to the same..." This mirrors the oath required of federal officers within 5 U.S.C. § 3331 (Exhibit F).

**This Critical Point** establishes Plaintiff's exclusion status and demonstrates that he maintains this unique status, not a subordinate ward-guardian status, confirming his standing to bring this action as a member of a separate and distinct political community with whom the United States maintains a government-to-government relationship. This document is self-authenticating pursuant to FRE 902(8) as a document accompanied by a certificate of acknowledgment lawfully executed by a notary public; alternatively, authentication may be established through FRE 901(b)(1) (Plaintiff's testimony that this is his executed Oath and Affirmation) or FRE 901(b)(4) (distinctive characteristics including the October 16th, 2020 date, specific language mirroring Exhibit F, and Plaintiff's signature). The execution of this Oath establishes that Plaintiff is not a "U.S. citizen" within the meaning of the Fourteenth Amendment, but rather an "Indians not taxed" maintaining allegiance to a separate and distinct Confederacy, thereby distinguishing his status from "domestic dependent [Native-American] nations" described in Exhibit N.

4.) **EXHIBIT D – United States Constitution, Amendment XIV, Section 2, 'Excluding Indians Not Taxed'**
*(Mentioned in Paragraphs 8)*

**Description:** Confirms the exclusion of "Indians not taxed" from the U.S. population for apportionment purposes, reinforcing the political

Page 4 of 21

(not racial) nature of this classification. Together with Exhibit B, establishes the Constitutional framework recognizing Indigenous Aborigine American nations as separate political communities.

**This Critical Point** triggers strict scrutiny review through *Elk v. Wilkins, 112 U.S. 94 (1884)*, because classifications targeting "Indians not taxed" are political, not racial, and constitute a suspect class due to their historical treatment as separate and distinct People with treaty-based government-to-government relationships. Unlike rational basis review applied to economic regulations, strict scrutiny requires that any differential treatment — such as the TSA's exclusion of non-federally-recognized Indigenous nations — be justified by a compelling government interest and narrowly tailored to achieve that interest. The TSA's policy fails this test because it denies the fundamental right to travel without any individualized security justification, instead relying solely on Plaintiff's protected political status. The Court may take judicial notice of this Constitutional provision as a matter of law pursuant to the Court's inherent authority and F.R.E. 201(b)(2).

5.) **EXHIBIT E – Northwest Ordinance of 1787, Section 14, Article 3**
*(Mentioned in Paragraphs 3, 15:3, 30, 36, 39a, 46b, and 54)*
**Description:** The "utmost good faith" provision binding upon all federal officers. This compact mandates that Indigenous Americans "shall never be invaded or disturbed" in their "property, rights, and liberty." Through the Supremacy Clause (Article VI), this constitutes the Supreme Law of the Land, creating fiduciary obligations that Defendant Stokely breached. Federal courts have held this provision binding on individual Indians, not merely federally recognized tribes, See *Swimming Turtle v. Board of County Commissioners, 441 F. Supp. 368 (N.D. Ind. 1975)*.

**This Critical Point** establishes the fiduciary duty owed by Defendant Stokely and all federal officers to the Plaintiff as an Indigenous Aborigine American, creating a ministerial (not discretionary) obligation to prevent the "invasion or disturbance" of Plaintiff's rights and liberties, including the fundamental right to travel. This Point also establishes lawful authority. The Court may take judicial notice of this provision as a matter of law and public record pursuant to the Court's inherent authority and F.R.E. 201(b)(2) (as a fact capable of accurate determination from an indisputable source).

6.) **EXHIBIT F – 5 U.S.C. § 3331: Oath of Office**
*(Mentioned in Paragraphs 32 – 33)*

**Description**: The oath required of Defendant Stokely and all federal officers: "I... do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same..."

**This Critical Point** establishes the mandatory, ministerial duty of federal officers to uphold Constitutional protections for "Indians not taxed," including Exhibit E's mandate of the "utmost good faith." Defendant Stokely's breach of this oath by failing to accept Plaintiff's identification and implement alternative verification procedures constitutes negligence per se. This Point also establishes lawful authority. The Court may take judicial notice of this provision as a matter of law and public record pursuant to the Court's inherent authority and F.R.E. 201(b)(2) (as a fact capable of accurate determination from an indisputable source).

7.) **EXHIBIT G – TSA Acceptable Identification Policy**
*(Published on TSA website as of June 27th, 2024)*

*(Mentioned in Paragraphs 2, 15:3, 26, 38, 39c, 40b, 41, and 51)*

**Description**: TSA policy published on its website as of June 27th, 2024. It establishes mandatory, non-discretionary procedures for alternative identity verification when travelers present non-standard identification, stating that travelers without acceptable ID "may still be allowed to fly" after completing an identity verification process, and that "if your identity is confirmed, you will be allowed to enter the screening checkpoint."

**This Critical Point** establishes the specific, mandatory duty that Defendant Stokely breached by failing to implement the alternative verification procedure, rendering his actions a ministerial (not discretionary) breach subject to FTCA liability. The Court may take judicial notice of this public record pursuant to FRE 201(b)(2) (as a fact capable of accurate determination from an indisputable governmental source) and FRE 902(5) (as an official publication of a public authority). Alternatively, authentication may be established through FRE 901(b)(4) by the distinctive characteristics of the official TSA website (tsa.gov domain, agency logos, and official publication format).

8.) **EXHIBIT H – 1860 Census: Instructions to Marshals – Special Instructions, 5. Indians**

**This Primary Resource** is **RESERVED** for potential future proceedings. It states: "Indians not taxed are not to be enumerated. The families of Indians who have renounced tribal rule, and who under State or Territorial laws exercise the rights, [privileges, and benefits] of [U.S.] citizens, are to be enumerated."

**This Critical Point is RESERVED.** Not cited in this Complaint.

**9.) EXHIBIT I:1 – Notarized Indigenous Aborigine American Self-Identification Card**

*(Mentioned in Paragraphs 2, 21, 32, 36, 40, and 51)*

**Description:** Plaintiff's lawful, notarized self-identification as a Firekeeper Chief for the I.C.A.A.P., including photograph, identifying information, and geographical location. This document was pre-verified by the TSA Contact Center (Exhibit J) and presented to Defendant Stokely at the security checkpoint on June 27th, 2024.

**This Critical Point** establishes Plaintiff's identity and status as an "Indians not taxed" at the time of the incident, demonstrating that the refusal was based solely on political status, not security concerns. This document is self-authenticating pursuant to FRE 902(8) as a notarized document accompanied by a certificate of acknowledgment lawfully executed by a notary public. Alternatively, should the Court require foundational evidence, authentication may be established under FRE 901(b)(1) (Plaintiff's testimony that this is his self-identification card) or FRE 901(b)(4) (distinctive characteristics including the notary seal, photograph, and security features).

**10.) EXHIBIT I:2 – Notarized Indigenous Aborigine American Dossier (containing H. Con. Res. 331: A Concurrent Resolution, 100th Congress, 1988)**

*(Mentioned in Paragraphs 2, 3, 21, 28, 30, 32, 36, 40, 46c (2), 52 and 54)*

**Description:** Plaintiff's comprehensive notarized Dossier establishing his identity, lineage, and status as a Firekeeper Chief for the I.C.A.A.P., including photograph, geographical location, and identifying information. Contained within this Dossier is H. Con. Res. 331 (100th Congress, 1988), the Congressional acknowledgment of the Iroquois

Confederacy's contribution to the U.S. Constitution and affirmation of the government-to-government relationship between the I.C.A.A.P. and the United States, recognizing the "special relationship" between both governments.

**This Critical Point** establishes Plaintiff's identity and juridical personality through the Dossier — which Defendant Stokely specifically refused to accept at the checkpoint — while distinguishing his Confederacy from "domestic dependent [Native-American] nations" through *Worcester* and *Cherokee Nation* through H. Con. Res. 331, establishing that the I.C.A.A.P. maintains an independent political status with whom the United States maintains treaties and diplomatic relations, not a ward-guardian relationship. The refusal to accept this Dossier, which contained the Congressional acknowledgment of Plaintiff's government-to-government status, confirms that the discrimination was based solely on his Indigenous Aborigine American identity and his exclusion status.

11.) **EXHIBIT J – Email Correspondence from TSA Contact Center (2 Parts)**
   - **Exhibit J:1-J:2 –** Initial Inquiry (Dated May 27th, 2024) and TSA Contact Center Response (Dated May 27th, 2024)
   - **Exhibit J:3-J:4 –** Post-Incident Complaint and Civil Rights Referral (Dated June 28th, and July 24th, 2024)

   *(Mentioned in Paragraphs 18, 19, and 39b)*

**Description:**
   - **J:1-J:2 –** Plaintiff's initial inquiry attaching Exhibit I:1, requesting confirmation of acceptability for "Excluding Indians Not Taxed" travelers. The TSA Contact Center's

written response establishing that there is "no standard list" of acceptable secondary identification, instructing Plaintiff to "bring what you have available," and confirming that "[i]f we are able to confirm your identity, you will be cleared to enter the screening checkpoint." This constituted pre-verification that alternative verification procedures were available.

- **J:3-J:4** – Post-incident correspondence including the June 28th, 2024, complaint regarding Defendant Stokely's discriminatory refusal and the July 24th, 2024 response forwarding the civil rights complaint to the Customer Service Manager for local airport review.

**This Critical Point** establishes that alternative verification procedures were pre-authorized and available for Plaintiff's Exhibit I:1-2 prior to the June 27th incident. This correspondence is authenticated pursuant to FRE 901(b)(4) (distinctive characteristics including the official tsa.dhs.gov domain, standard agency formatting, and content referencing Service Request Numbers 06512730 and 06570976), and FRE 901(b)(1) (Plaintiff's testimony as witness with knowledge of sending and receiving these communications). Defendant Stokely's refusal to implement these procedures — despite the Contact Center's explicit guidance — was a ministerial breach of mandatory policy, not a discretionary security judgment. The Contact Center's case-by-case authorization (Exhibit J:2-J:4) elevated the statutory duty through 49 C.F.R. § 1540.107(c) to a binding determination that Stokely was required to follow, rendering his failure to do so a clear breach of non-discretionary, ministerial duty.

**12.) EXHIBIT K – Witness Statements**

*(Mentioned in Paragraphs 25)*

**Description**: Statements from Plaintiff's mother and son, who witnessed the discriminatory refusal at the TSA checkpoint and Defendant Stokely's failure to implement mandatory alternative verification procedures.

**This Critical Point** corroborates the factual allegations of negligence, intentional discrimination, and the public humiliation suffered by Plaintiff, supporting the claim for emotional distress damages.

**13.) EXHIBIT L:1 – A Law Dictionary Adapted to the Constitution and Laws of the United States** *by John Bouvier, Revised Sixth Edition, 1856*
*(Mentioned in Paragraph 46c)*

**Description**: Lawful definitions of "INDIAN TRIBE" and "INDIANS," distinguishing between Indigenous Aborigine Americans (first definition: "The aborigines of this country") and "domestic dependent nations" (second definition: situated within state boundaries, "resemble that of a ward to his guardian").

**This Critical Point** establishes the fundamental lawful distinction between Plaintiff's status as an Indigenous Aborigine American (separate and distinct political community) and the "domestic dependent [Native-American] nations" addressed in *Worcester* and *Cherokee Nation* (ward-guardian relationship), supporting the argument that strict scrutiny applies to discrimination against "Indians not taxed." The Court may consult this reference material in its interpretive capacity; dictionary definitions are not subject to formal

Case 2:26-cv-01195-JPS    Filed 07/08/26    Page 11 of 21    Document 1-3

judicial notice through FRE 201(a) because they constitute legislative facts, not adjudicative facts.

## 14.) EXHIBIT L:2 – Black's Law Dictionary (4th Edition)

*(Mentioned in Paragraph 45)*

**Description:** "to detain" as "to delay, to hinder, to restrain from proceeding."

**This Critical Point** precisely describes the Fourth Amendment seizure suffered by Plaintiff when Defendant Stokely prevented him from proceeding to his flight, establishing the unreasonable restraint of liberty. The Court may consult this reference material in its interpretive capacity; dictionary definitions are not subject to formal judicial notice through FRE 201(a) because they constitute legislative facts, not adjudicative facts.

## 15.) EXHIBIT M – Congressional Globe, 39th Congress, 1st Session

*(February 1st, 1866)*
*(Mentioned in Paragraphs 35, and 46c (3))*

**Description:** Legislative history confirming the political (not racial) nature of the "Indians not taxed" classification. It contains Senator Doolittle's statement: "Indians not taxed were excluded because they were not regarded as a portion of the population of the United States. They are subject to the tribes to which they belong... existing in our midst but not constituting a part of our population, and with whom we make treaties."

**This Critical Point** confirms the legislative intent behind the Fourteenth Amendment to treat "Indians not taxed" as members of separate political bodies, not as U.S. citizens, supporting the suspect

Case 2:26-cv-01195-JPS    Filed 07/08/26    Page 12 of 21    Document 1-3

class analysis through *Elk v. Wilkins.* The Court may take judicial notice of this legislative history as a public record pursuant to FRE 902(4) and the Court's authority to consider historical legislative facts.

16.) **EXHIBIT N – Senate Report No. 268, 41st Congress, 3d Session**
*(December 14th, 1870)*
*(Mentioned in Paragraphs 35, and 46c (3))*

**Description:** Senate Judiciary Committee Report on the Effect of the Fourteenth Amendment Upon Indian Tribes. It contains Chief Justice Marshall's holding in *Worcester v. Georgia* and his description in *Cherokee Nation v. Georgia* of tribes as "domestic dependent nations" whose "relations to the United States resemble that of a ward to his guardian." It further states: "Indians not taxed are not subject to the jurisdiction of the United States in the sense in which the term jurisdiction is employed in the fourteenth amendment... They are not otherwise subject to the control of the United States than is consistent with their character as separate political communities."

**This Critical Point** establishes the critical distinction between "domestic dependent nations" (ward-guardian status under Title 25) and "Indians not taxed" (separate political communities), confirming that the latter exist independently of U.S. jurisdiction and are entitled to strict scrutiny protection. The Court may take judicial notice of this legislative history as a public record pursuant to FRE 902(4) and the Court's authority to consider historical legislative facts.

17.) **EXHIBIT O – American Declaration on the Rights of Indigenous Peoples (A.D.R.I.P.)**
*(Organization of American States, adopted June 15th, 2016)*

Case 2:26-cv-01195-JPS    Filed 07/08/26    Page 13 of 21    Document 1-3

*(Mentioned in Paragraphs 3, 8, 17)*

**Description**: International instrument endorsed by the United States affirming Indigenous rights to: self-determination (Article III), juridical personality (Article IX), autonomy and self-government (Article XXI), and Indigenous law and jurisdiction (Article XXII).

**This Critical Point** establishes Plaintiff's rights through international law to self-representation (pro se), juridical personality distinct from U.S. citizenship, and freedom from disturbance in his liberty and right to travel, supporting the injunctive relief sought. This official publication of the Organization of American States is self-authenticating pursuant to FRE 902(5) and may be judicially noticed through FRE 201(b)(2) as a public record of an international organization.

18.) **EXHIBIT P – Universal Declaration of Human Rights (U.D.H.R.)**
*(Mentioned in Paragraph 16)*

**Description**: This Primary Resource is the foundational international instrument adopted by the United Nations General Assembly on December 10th, 1948, establishing universal standards for human rights protection. Specifically relevant to this action are: Article 3 (right to life, liberty and security of person or Indigenous status), Article 6 (right to recognition everywhere as an [Indigenous Aborigine American] before the law), Article 7 (equal protection before the law), Article 13 (right to freedom of movement), and Article 15 (right to a nationality). This exhibit establishes the baseline for the rights of "Indians not taxed as separate and distinct political communities entitled to recognition of their juridical personality and freedom from discriminatory exclusion.

**This Critical Point** establishes the international human rights framework that reinforces the United States' fiduciary obligations through the "utmost good faith" standard (Exhibit E), supports the government-to-government relationship recognized in H. Con. Res. 331 (Exhibit I:2), and affirms the "utmost good faith" mandate that Indigenous Aborigine Americans "shall never be invaded or disturbed" in their rights and liberty. When combined with the A.D.R.I.P. (Exhibit O), the U.D.H.R. establishes a binding international norm protecting Indigenous self-identification and freedom of movement that informs the interpretation of Constitutional protections through the Fourth and Fourteenth Amendments. This official publication of the Organization of American States is self-authenticating pursuant to FRE 902(5) and may be judicially noticed through FRE 201(b)(2) as a public record of an international organization.

19.) **EXHIBIT Q – 100th Congress, 1st Session, S. Con. Res. 76: Concurrent Resolution**

**This Primary Resource** is RESERVED for potential future proceedings. It acknowledges the "special relationship" and government-to-government relationship with Indian tribes.

**This Critical Point** is RESERVED. Not cited in this Complaint.

20.) **EXHIBIT R – TSA Denial Letter** *(Dated September 18th, 2025) (Mentioned in Paragraph 4 and 5)*

**Description:** formal denial of Plaintiff's initial administrative claim, stating: "To the extent the claim arises from alleged violations of the Constitution and Federal laws of the United States, such claims are not cognizable under FTCA."

**This Critical Point** establishes that the denial was procedural (Constitutional claims not cognizable under FTCA), not merits-based, and demonstrates that the Amended Claim properly cured this deficiency by clarifying the negligence basis while preserving Constitutional claims through this independent Bivens action. The Court may take judicial notice of this public record pursuant to FRE 201(b)(2) (as a fact capable of accurate determination from an indisputable governmental source) and FRE 902(4).

21.) **EXHIBIT S:1 – Initial SF-95 Claim Form**
*(Mentioned in Paragraph 4)*

**Description:** The original Standard Form 95 filed with the TSA, presenting the initial administrative claim in the amount of $5,000. This document commenced the administrative exhaustion process under the FTCA.

**This Critical Point** establishes the baseline procedural filing that the TSA denied on September 18th, 2025 (Exhibit R), necessitating the subsequent amended filings. This document is authenticated pursuant to FRE 901(b)(1) (Plaintiff's testimony regarding its execution and filing) and FRE 901(b)(4) (distinctive characteristics including the claim number and TSA filing stamps).

**EXHIBIT S:2 – Supplemental Document for Initial FTCA Claim**
*(Dated September 29th, 2025)*
*(Mentioned in Paragraph 4)*

**Description:** The original supplemental narrative filed in support of the initial SF-95 (Exhibit S:1), detailing the factual background, legal theories, and damages arising from the June 27th, 2024 incident.

**This Critical Point** provides the foundational factual and lawful context for the initial claim, demonstrating the procedural continuity between the original and amended filings. This document is authenticated pursuant to FRE 901(b)(1) (Plaintiff's testimony regarding its preparation and filing).

22.) **EXHIBIT S:3 – Amended Supplemental Document**
*(Mentioned in Paragraph 4)*

**Description:** The amended Standard Form 95 filed on September 29th, 2025, curing the procedural deficiencies identified in the TSA's denial letter (Exhibit R) by clarifying the $75,000 sum certain and explicitly grounding the claim in negligence under the FTCA. Amended Supplemental Document

**This Critical Point** cures the sum certain and lawful theory deficiencies, establishing the operative claim amount under 28 U.S.C. § 2675(b). This document is authenticated pursuant to FRE 901(b)(1) (Plaintiff's testimony regarding its execution and filing) and FRE 901(b)(4) (distinctive characteristics including the amended claim number and date).

23.) **EXHIBIT S:4 – Amended Supplemental Document**
*(Mentioned in Paragraph 3-4)*

**Description:** The amended supplemental narrative filed on September 29th, 2025, in support of the Amended SF-95 (Exhibit S:3), providing the refined negligence theory, ministerial breach analysis, and corrected damages statement.

**This Critical Point** demonstrates Plaintiff's good faith effort to cure all procedural deficiencies identified in the TSA's denial, including the

explicit articulation of the negligence basis. This document is authenticated pursuant to FRE 901(b)(1) (Plaintiff's testimony regarding its preparation and filing).

**24.) EXHIBIT S:5 – Request for Reconsideration of Claim No. 2025032692861**
*(Mentioned in Paragraph 4)*

**Description**: The formal written request for reconsideration filed on September 29th, 2025, pursuant to 28 C.F.R. § 14.9(b), requesting that the TSA reconsider its denial in light of the amended negligence theory and properly stated sum certain.

**This Critical Point** Resets the administrative exhaustion clock under 28 C.F.R. § 14.9(b) and establishes that the deemed denial of March 29th, 2026, arose from the TSA's failure to act on the reconsideration request. This document is authenticated pursuant to FRE 901(b)(1) (Plaintiff's testimony regarding the filing of this Request) and FRE 901(b)(4) (distinctive characteristics including the claim number 2025032692861 and the date it was presented).

**25.) EXHIBIT T – Notice of Intent to Sue** *(Dated February 25th, 2026)*
*(Mentioned in Paragraph 4)*

**Description:** Formal notice to TSA of intent to file federal suit if the claim was not resolved within the statutory period.

**This Critical Point** establishes the date from which the six-month deemed denial period was calculated according to 28 U.S.C. § 2675(a), confirming this action was filed within the statutory timeframe. This

document is authenticated pursuant to FRE 901(b)(1) (Plaintiff's testimony that he transmitted this notice to TSA) and FRE 901(b)(4) (distinctive characteristics including the February 25th, 2026 date, claim reference numbers, and transmission records). The transmission of this Notice triggered the six-month administrative exhaustion period, rendering the deemed denial of March 29th, 2026 effective and this action timely filed.

26.) **EXHIBIT U – Boarding Pass and Southwest Airlines Reservation Details**

*(Mentioned in Paragraph 20)*

**Description**: Documentation confirming Plaintiff's scheduled flight on June 27th, 2024, including flight numbers, departure time, and reservation details, establishing that Plaintiff held a valid, confirmed reservation for air travel.

**This Critical Point** establishes the concrete injury-in-fact required for Article III standing, supports the compensatory damages claim for the loss of travel opportunities, and provides the evidentiary basis for the monetary losses element of the FTCA negligence claim. This documentation is authenticated pursuant to FRE 901(b)(1) (Plaintiff's testimony as witness with knowledge of purchasing the ticket and possessing these documents) and FRE 901(b)(4) (distinctive characteristics including Southwest Airlines formatting, flight confirmation numbers, June 27th, 2024 date, passenger name or title "U'si Ch-ab," and associated reservation metadata). The boarding pass confirms that Plaintiff held a valid, confirmed reservation for travel on the date of the incident, establishing that Defendant Stokely's refusal to accept Plaintiff's identification directly caused the concrete, particularized, and actual injury of being denied the right to travel,

which forms the basis for the $75,000.00 claim for severe emotional distress, public humiliation, and dignitary harm.

**27.) EXHIBIT V – U'si Ch – ab's International Identity Affidavit**

**Description:** Plaintiff's notarized affidavit affirming his status as a Firekeeper Chief for the I.C.A.A.P., his Onkwehonwe Mohawk bloodline and birthright, and his political classification as an "Indians not taxed" through Exhibit's B & D. The affidavit further establishes Plaintiff's renunciation of allegiance to the United States of America, his affirmation of allegiance to the I.C.A.A.P. under the Great Law of Peace, and his distinct juridical personality as an Indigenous Aborigine American maintaining a government-to-government relationship with the United States. This document was sworn and affirmed before a notary public.

**This Critical Point** establishes Plaintiff's foundational status as an "Indians not taxed" and his juridical personality distinct from U.S. citizenship, providing direct evidence that the discriminatory refusal was based solely on political status rather than security concerns. This document is self-authenticating pursuant to FRE 902(8) as a notarized document accompanied by a certificate of acknowledgment lawfully executed by a notary public. Alternatively, should the Court require foundational evidence, authentication may be established through FRE 901(b)(1) (Plaintiff's testimony regarding the execution of this affidavit) or FRE 901(b)(4) (distinctive characteristics including the notary seal, photograph, and security features).

**28.) EXHIBIT W – [UNDEFINED / RESERVED]**
STATUS: Currently undefined and reserved for future use.

## REQUEST FOR JUDICIAL NOTICE

Plaintiff respectfully requests that this Court take judicial notice of the following pursuant to the F.R.E. and the Court's inherent authority:

(a) All Constitutional provisions, treaties, and federal statutes (Exhibits B, D, E, F, P) as matters of law and public records pursuant to the Court's inherent authority and FRE 201(b)(2);

(b) All legislative history, congressional records, and official reports (Exhibits M, N) as public records pursuant to FRE 902(4) and FRE 201 (as facts capable of accurate determination);

(c) All agency policies, administrative records, and official correspondence (Exhibits G, J, R, T) as public records of official acts pursuant to FRE 902(4) and FRE 201(b)(2);

(d) All adjudicative facts contained in the video recording (Exhibit A), identification documents (Exhibit I:1), and administrative correspondence (Exhibit S:2) that are not subject to reasonable dispute pursuant to FRE 201(a)-(b).

IN HONOR AND RESPECT

U'si Ch – ab

f/k/a Alan N. Carroll Jr,

C/O Near 1208A Carr Place

OSHKOSH, WISCONSIN (Northwest Territory of North America)

Zip – Code Exempt D.M.M. 602 1:3 e (2)

Near [54901]

Futuregentleman_2012@hotmail.com

920-385-1521

Page 21 of 21